UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
ELIZABETH EVANS,

                Plaintiff,                14 Civ.  ( )

      -against-

COLUMBIA UNIVERSITY IN THE CITY
OF NEW YORK, EILEEN EVANINA,
and WILLIAM ENLOW,

**Jury Trial Demanded**  JUDGE ROMAN

              Defendants.
---------------------------------------------------------x

**14 CV 2658**

Plaintiff ELIZABETH EVANS, by her attorneys The Bellantoni Law Firm, PLLC, for her complaint respectfully states:

## NATURE OF THE ACTION

1.    This is an action for compensatory and punitive damages proximately resulting from conduct engaged in by the Defendants in violation of Plaintiff's rights as guaranteed by Title VI, and state law claims pursuant to New York Human Rights Law and New York City Human Rights Laws.

## JURISDICTION

2.    The Court's jurisdiction is invoked pursuant to 28 U.S.C. §§1331, 1343. With respect to the Title VI claim, following Plaintiff's timely filing of a Charge of Discrimination premised upon race, the New York Department Division of Human Rights granted Plaintiff the right to a dismissal for administrative convenience from the Division to pursue her relevant federal and state law claims.

1

## THE PARTIES

3.      Plaintiff, ELIZBETH EVANS ("Plaintiff"), is a citizen of the United States, a domiciliary of the State of New York and a resident of the Northern Counties.

4.      Plaintiff is an African-American female.

5.      At all times relevant herein, Plaintiff was an entitled beneficiary of a program or activity receiving federal financial aid from Columbia University.

6.      Defendant, COLUMBIA UNIVERSITY, ("Columbia") is a domestic corporation duly organized and existing under and by virtue of the laws of the State of New York.

7.      Columbia is a foreign corporation authorized to do business in the State of New York.

8.      At all times relevant herein, Columbia and/or the Program in Nurse Anesthesia was the recipient of federal funding in the form of, *inter alia,* federal financial aid.

9.      At all times relevant herein, Columbia maintained a principal place of business in the County of New York, State of New York.

10.     Defendant EILEEN EVANINA, ("Evanina") at all times relevant herein was the Director of Columbia's Program in Nurse Anesthesia and responsible for the assignment of grades and clinical rotations for students in the Program.

11.     Evanina is a Caucasian female.

12.     Defendant WILLIAM ENLOW, ("Enlow") at all times relevant herein was an Assistant Professor of Nursing and Assistant Director of the Program in Nurse Anesthesia and responsible for the assignment of grades and clinical rotations for students at Columbia's School of Nursing.

2

13.     Enlow is a Caucasian male.

## THE FACTS

14.     Plaintiff entered into Columbia's Nurse Anesthesia Program (the "Program") in May 2009.

15.     The first twelve months of Plaintiff's participation in the Program consisted solely of classroom work.

16.     Evaluation of Plaintiff's performance was based on objective criteria consisting of multiple choice question examinations and papers.

17.     Plaintiff's performance during the initial period was excellent, earning her a position in Columbia's Honor's Society.

18.     The remaining portion of the Program, the "clinical period" consisted of seminars, which were graded by examinations and presentations and seven (7) clinical rotations in various hospitals.

19.     Evaluation in the clinical period is subjective.

20.     Evaluation of students in the clinical period consists of daily evaluation forms to be completed by the student's assigned daily preceptor.

21.     The method of evaluation during the clinical period, as provided on the pre-printed evaluation forms, is as follows: "1" for exceeds expectations, "2" for meets expectations, "3" for needs improvement.

22.     Students were required to submit the daily evaluation forms to the faculty for review throughout the semester.

23.     Students were also graded based on a midterm and final evaluation.

24.     Columbia was supposed to assign the students' letter grade for the clinical course based on the subjective evaluation forms.

25.     In almost all of her clinical evaluations, Plaintiff earned a "meets" or "exceeds expectations" during her clinical rotation.

26.     During her clinical rotation, Plaintiff encountered several racially discriminatory remarks made by Columbia employees, agents and affiliates.

27.     The individuals who made the remarks were responsible for assessing and assigning Plaintiff's grades during the subjective clinical portion of the Program.

28.     Plaintiff's grades for the semester were determined by Columbia's Program Director Evanina ("Evanina") and Assistant Director Enlow.

29.     On December 13, 2010, Plaintiff was informed by Evanina and Enlow that she was "not meeting expectations".

30.     Plaintiff showed Evanina and Enlow her positive written evaluations and described the positive verbal feedback that she had received from her preceptors.

31.     Despite Evans' positive written evaluations and feedback, Evanina and Enlow insisted that Plaintiff was not meeting expectations.

32.     Evanina and Enlow failed to provide to Plaintiff any evidence, written or otherwise, to support their claims that she was "not meeting expectations".

33.     Plaintiff requested that Evanina and Enlow observe her clinical work at the respective clinical sites, however they declined.

34.     Despite her outstanding evaluations, Plaintiff was informed that she would receive a "C" for the semester.

35.     At one of Plaintiff's clinical rotations, New York University Hospital, she encountered a preceptor who was critical and historically harsh toward African-American students.

36.     Plaintiff made her concerns regarding racial discrimination known to Evanina and Enlow and requested that she be transferred to another clinical site in order to complete her rotation.

37.     Evanina and Enlow denied Plaintiff's application for a transfer.

38.     The NYU preceptor gave Plaintiff an evaluation inconsistent with Plaintiff's written evaluations from other preceptors at her NYU rotation.

39.     The NYU preceptor gave Plaintiff an evaluation substantially based on her race.

40.     Evanina and Enlow were aware that the NYU evaluation from the NYU preceptor was based on race and not Plaintiff's performance.

41.     The NYU evaluation was ultimately used as a basis to dismiss Plaintiff from the Program.

42.     Evanina and Enlow thereafter required that Plaintiff attend biweekly meeting for the purpose of guiding her training.

43.     The meetings consisted of the defendants generally informing Plaintiff that she was "not at the level" they expected.

44.     Evanina and Enlow never informed Plaintiff or explained at what "level" they expected her to be.

45.     No additional training or guidance was provided by the defendants during these meetings.

46.     No course of remediation was provided by the defendants during these meetings.

47.     During one of the meetings, Evanina informed Plaintiff that she was not "special" because, like Plaintiff, she herself (Evanina) was a "single mother on welfare".

48.     Plaintiff was shocked at the discriminatory, gratuitous and racially motivated remark, as she is neither a single mother nor is she, or was she ever, on welfare.

49.     Plaintiff was given a second "C" from Evanina and Enlow as her overall grade for the Program.

50.     It is the policy at Columbia to dismiss students who have been assigned more than one "C" grade.

51.     The defendants dismissed Plaintiff from the Program nine (9) weeks prior to her completion of the Program.

52.     Plaintiff filed a grievance based on her receipt of two (2) "C" grades.

53.     On July 26, 2011, and as a result of her grievance, Plaintiff was readmitted to the Program with the condition that she repeat one (1) semester.

54.     On January 3, 2012, Plaintiff began her clinical rotation at North Shore University Hospital ("North Shore"), which rotation was assigned to her by Evanina and Enlow.

55.     The clinical coordinator at North Shore was Linda Downs ("Downs').

56.     Downs, like the preceptor at NYU Hospital discussed above, had a reputation of discriminatory actions against African-Americans in the Program.

57.     African-American students disproportionately received failing grades while participating in the North Shore rotation under Downs.

58.     African-American students often found Downs so difficult to deal with that they requested to be transferred from her rotation to another clinical site.

59.    Plaintiff's experience at North Shore bore out Downs' discrimination and harsh treatment toward African-Americans.

60.    Two days after her midterm evaluation, which evaluation demonstrated that she had been progressing as a student, Downs informed Plaintiff that after speaking with Enlow she changed her mind about how she felt about Plaintiff's progress.

61.    Plaintiff's written evaluations from other preceptors at North Shore, however, demonstrated that she either met or exceeded expectations.

62.    The day before Plaintiff was to complete her clinical rotation at North Shore, Downs informed Plaintiff that she could not return to North Shore.

63.    Evanina and Enlow assigned an "F" grade to Plaintiff for the course and dismissed Plaintiff with only (8) weeks remaining in the Program.

64.    In February 2012, Plaintiff was notified in writing that she failed the repeated clinical course.

65.    Plaintiff again requested a Grievance Panel; the same individuals who heard her first grievance also heard the second grievance.

66.    The grievance panel determined that the grade was appropriately assigned.

67.    Plaintiff was thereafter dismissed from the Program on May 4, 2012.

68.    Plaintiff's assigned clinical grades were substantially motivated by race.

69.    Plaintiff's dismissal from the Program was substantially motivated by race.

70.    Plaintiff was treated disparately from the Caucasian students in the Program.

71.    The preceptors and directors at the institutions wherein the Nurse Anesthesia students were assigned to complete their clinical rotations are agents, independent contractors and/or affiliates of Columbia's Nurse Anesthesia Program.

7

72.     The defendants had actual and constructive knowledge that the institutions wherein the Nurse Anesthesia students were assigned to complete their clinical rotations were subjecting the African-American students to discriminatory treatment.

73.     Defendants, themselves, treated African-American students disparately from Caucasian students.

74.     By way of one example, a Caucasian student had made a medication error resulting in a preceptor having to remove drugs from a patient's system in order to avoid dangerous side effects but received little to no harsh treatment.

75.     Plaintiff's commission of an innocuous medication error with a safe medication with mild side effects was listed as a basis for Plaintiff's dismissal.

76.     African-American students comprise a small percentage of the students in the Program, however they disproportionately comprise a larger percentage of those dismissed from the Program.

77.     From 2009 through 2012, zero (0) Caucasian students were dismissed from the Program for "substandard academic records".

78.     During that same time period, only one (1) Caucasian student on the Program was put on academic probation based on a "C" grade.

79.     During that same time period, four (4) African-American students were dismissed from the Program for "substandard academic records."

80.     The four (4) African-American students who were dismissed during 2009 through 2012 were all dismissed during the subjective clinical portion of the Program.

81.     A review of Plaintiff's daily clinical evaluations and summary rotation evaluations objectively demonstrate Plaintiff consistently met or exceeded expectations.

82.     The subjective grades assigned to Plaintiff by Evanina and Enlow were motivated by and substantially based on race.

83.     In and around February 2013, Plaintiff duly filed a race-based charge of discrimination against Columbia with the New York Division of Human Rights (the "Division").

84.     The Division found probable cause to believe that Columbia impermissibly discriminated against Plaintiff based on her race.

85.     The Division thereafter granted Plaintiff's request to dismiss the complaint for administrative convenience in order that she may pursue her federal and state causes of action herein.

86.     As a result of the defendants' dismissal of Plaintiff from the Program, she has been caused to suffer, *inter alia,* emotional pain and suffering, depression, anger, sleeplessness, anxiety and the physical manifestations of the same, economic damages, harm to her personal and professional reputation.

## AS AND FOR A FIRST CAUSE OF ACTION

87.     Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "86", inclusive.

88.     Under the premise that defendants violated Plaintiff's rights as guaranteed by Title VI of the Civil Rights Act of 1964, 42 U.S.C. §2000d.

## AS AND FOR A SECOND CAUSE OF ACTION

89.     Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "88", inclusive.

90.     Under the premise that defendants violated Plaintiff's rights as guaranteed by 42 U.S.C. §1981.

## AS AND FOR A THIRD CAUSE OF ACTION

91.     Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "90", inclusive.

92.     Under the premise that defendant Columbia University is liable for the New York State common law for breach of contract.

## AS AND FOR A FOURTH CAUSE OF ACTION

93.     Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "92", inclusive.

94.     Under the premise that defendants violated Plaintiff's rights pursuant to New York State Human Rights Law, Executive Law §296 *et. seq.*

## AS AND FOR A FIFTH CAUSE OF ACTION

95.     Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "94", inclusive.

96.     Under the premise that defendants violated Plaintiff's rights pursuant to New York City Human Rights Law, Administrative Code §8-107 *et seq.*

## AS AND FOR A SIXTH CAUSE OF ACTION

97.     Repeats and realleges as if fully set forth the allegations of fact contained in paragraphs "1" to "98", inclusive.

99.     Under the premise that the individual defendants acted individually and in concert/aiding and abetting one another in the violation of Plaintiff's rights pursuant to the aforementioned federal and state statutes.


WHEREFORE judgment is respectfully requested:

       a.  Awarding against the defendants such compensatory damages as the jury may determine;

       b.  Awarding against the defendants such punitive damages as the jury may impose;

       c.  Awarding costs, disbursements and reasonable attorney's fees; and,

       d.  Granting such other and further relief as to the Court seems just and proper.

Dated: April 8, 2014
      Scarsdale, New York


              THE BELLANTONI LAW FIRM, PLLC
              *Attorneys for Plaintiff, Elizabeth Evans*

    By:    _____
          Amy L. Bellantoni (AB3061)
          2 Overhill Road, Suite 400
          Scarsdale, New York 10583
          (914) 367-0090
          (914) 367-0095 (facsimile)