USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 4/13/2015

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
ELIZABETH EVANS,

             Plaintiff,

   -against-

COLUMBIA UNIVERSITY IN THE CITY OF
NEW YORK, EILEEN EVANINA, and WILLIAM
ENLOW,

             Defendants.
------------------------------------------------------------- X

14-cv-2658 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff brings this action alleging racial discrimination in connection with her dismissal from the Nurse Anesthesia Program (the "Program") at Columbia University School of Nursing. Defendants the Trustees of Columbia University in the City of New York ("Columbia") (erroneously captioned as "Columbia University in the City of New York"), Eileen Evanina, and William Enlow move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND[1]

    Plaintiff, an African American female, enrolled in the Program in May 2009. (Compl. ¶ 14, ECF No. 1.) The Program is divided in two. During the first twelve months, students are evaluated based on allegedly "objective" measures such as examinations and papers. (*Id.* ¶ 16.)

---

[1] The following facts, viewed in the light most favorable to Plaintiff, are drawn from the Complaint (unless otherwise noted) and matters of which the Court may take judicial notice. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). The Court assumes those facts to be true unless conclusory or contradicted by more specific allegations or documentary evidence. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

The remaining portion of the Program is a "clinical period" consisting of seminars and clinical rotations at various hospitals. (*Id.* ¶ 14-18.) Although seminars are graded based on objective measures, grading for clinical rotations is allegedly "subjective." (*Id.* ¶ 20.) Students are evaluated each day by "preceptors" employed by the various hospitals. (*Id.*) Preceptors give students "1" for the day if they "exceed expectations," "2" if they "meet expectations," or "3" if they "need improvement" in various subject areas. (*Id.* ¶ 21.) Students also receive a midterm and final evaluation. (*Id.* ¶¶ 19-24.) The Columbia faculty then assigns letter grades for the semester based on the preceptors' daily evaluation forms and the midterm and final evaluations. (*Id.*) Plaintiff alleges that Eileen Evanina, the Director of the Program, and William Enlow, Assistant Professor of Nursing and the Assistant Director of the Program, were the Columbia faculty members responsible for grading Plaintiff. (*Id.* ¶¶ 10, 12.)

Plaintiff alleges that her performance during the "objective" portion of the Program was "excellent" (*id.* ¶ 17), but that her grades for her clinical rotations suffered because of racial bias, leading to her dismissal. Plaintiff received a C for a clinical course in December 2010, which Plaintiff claims was unsupported because "almost all" of her preceptor evaluations were 1s or 2s. (*Id.* ¶¶ 25, 29, 30-34.) The next semester, she allegedly received one negative evaluation from a preceptor who had a reputation for racial discrimination. (*Id.* ¶¶ 35-39.) As a result of the poor evaluation, Evanina and Enlow directed Plaintiff to attend biweekly "training" sessions, which were a sham because no additional training was provided. (*Id.* ¶¶ 42-47.) Plaintiff claims that at one of these sessions, Evanina implied that Plaintiff was a "single mother on welfare," which Plaintiff claims is untrue and revealed Evanina's assumptions about Plaintiff's race. (*Id.* ¶¶ 42-47.) Ultimately, Evanina and Enlow gave Plaintiff a second C and Plaintiff was

2

automatically dismissed from the Program pursuant to Columbia's grading policy.[2] (*Id.* ¶ 48-49.)

Plaintiff grieved her dismissal and was reinstated on the condition that she repeat a semester. (*Id.* ¶ 52-53.) Upon Plaintiff's return to the Program, Evanina and Enlow assigned Plaintiff to a rotation under Clinical Coordinator Linda Downs, another preceptor with a reputation for racial discrimination.[3] (*Id.* ¶ 54-58.) On the penultimate day of the semester, Downs told Plaintiff not to return to North Shore, even though Plaintiff's daily and midterm evaluations were positive. (*Id.* ¶¶ 60-62.) Plaintiff received an F for the course, grieved the F, and was dismissed on May 4, 2012 after the grievance panel upheld the grade. (*Id.* ¶¶ 65-67.)

Plaintiff offers one comparator to illustrate that she was treated disparately from Caucasian students. One of the reasons listed for Plaintiffs dismissal was that she committed a medication error. (*Id.* ¶ 75.) However, Plaintiff alleges that a Caucasian student who committed a comparatively more dangerous medication error received "little to no harsh treatment." (*Id.* ¶ 74.) Plaintiff further alleges that African-American students are dismissed from the Program at a higher rate than students of other races. (*Id.* ¶ 76.)

Plaintiff asserts that this course of conduct amounts to: (1) a violation of Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d ("Title VI"); (2) a violation of 42 U.S.C. § 1981; (3) a breach of contract; (4) a violation of the New York State Human Rights Law, Exec. Law § 296 *et seq.* ("NYSHRL"); and (5) a violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107 *et seq.* ("NYCHRL").

## STANDARD ON A MOTION TO DISMISS

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must supply "factual allegations

---

[2] Columbia's policy is to dismiss students who receive two Cs. (*Id.* ¶ 49.)
[3] Plaintiff alleges that African-American students working under Downs failed at a disproportional rate compared to students of other races and routinely requested to be transferred to other clinical sites. (*Id.* ¶ 56-58.)

sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In applying this standard, a court should accept as true all well-pleaded factual allegations, but should not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Id.* A court should give "no effect to legal conclusions couched as factual allegations." *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

## DISCUSSION

### I. Plaintiff's Title VI, NYSHRL, and NYCHRL Claims Must Be Dismissed

Tto survive a motion to dismiss, a plaintiff asserting a Title VI claim must allege that the university had notice of the complained-of discrimination. *See, e.g.*, *Gebser v. Lago Vista*, 524 U.S. 274, 286 (1998); *Roggenbach v. Touro Coll. of Osteopathic Med.*, 7 F. Supp. 3d 338, 348 (S.D.N.Y. 2014); *Manolov v. Borough of Manhattan Cmty Coll.*, 952 F. Supp. 2d 522, 527 n.1, 533 (S.D.N.Y. 2013); *Goonewardena v. New York*, 475 F. Supp. 2d 310, 329 (S.D.N.Y. 2007). Actual knowledge of "a school official with authority to address the alleged discrimination" muse be pleaded, "as opposed to mere constructive knowledge." *Carabello v. N.Y.C. Dep't of Educ.*, 928 F. Supp. 2d 627, 638 (E.D.N.Y. 2013); *see also Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 750 (2d Cir. 2003). Similar requirements exist under the NYSHRL, *Hart v. Sullivan*, 445 N.Y.S.2d 40, 41 (App. Div. 1981), *aff'd*, 55 N.Y.2d 1011 (1982) ("[T]o resist a motion to

dismiss . . . the complaint must allege that the employer had knowledge or acquiesced in the discriminatory conduct of a supervisor."); *see also Hyman v. Cornell Univ*, 834 F. Supp. 2d 77, 84 (N.D.N.Y. 2011), and the NYCHRL, NYC Admin. Code § 8-107(13)(b).

      Plaintiff's sole allegation regarding notice is insufficient.  Plaintiff alleges she "encountered a preceptor who was critical and historically harsh toward African-American students" (*id.* ¶ 35), and that she "made her concerns regarding racial discrimination known to Evanina and Enlow" (*id.* ¶ 36).  First, the allegation that the preceptor was critical and historically harsh toward African-American students is conclusory speculation unsupported by any other factual allegations.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (holding that the plaintiff cannot survive a motion to dismiss by relying on conclusory allegations).  Second, there is no allegation that Plaintiff informed Evanina and Enlow of any discrimination that she actually suffered, only of alleged "historical[]" discrimination by a preceptor that she encountered.  Finally, Plaintiff's notice allegation is flatly contradicted by her prior admissions in her administrative action before the New York State Division of Human Rights.  In her Verified Complaint in those proceedings she responded "No" to the question, "Did you report or complain about the discrimination to someone else?  *(If you told someone, filed a report or sent a letter about the discrimination, please indicate whether you went to a supervisor, a manager, the owner of the company, your human resources office, your union, your housing provider, the police, etc.).*"  (Toback Aff. Ex. B at 12, ECF No. 18-2.)  She further explained that she did not report the alleged discrimination because "[she] did not think that [she] would receive a fair audience within the University."  (*Id.* at 13.)  Furthermore, the Regional Director noted in his Final Investigation Report and Basis for Determination that "[Plaintiff] acknowledged that she never complained to [Columbia] about the remarks, stating that she feared retaliation."  (Toback

5

Aff. Ex. C at 2, ECF No. 18-3.)  And while these admissions are judicially noticeable, *see, e.g.*, *Landow v. Wachovia Sec., LLC*, 966 F. Supp. 2d 106, 119-20 (E.D.N.Y. 2013) (citing cases establishing that judicial notice may be taken of a party's admissions in prior proceedings that contradict that party's assertions of fact under certain circumstances), the factual allegations that Plaintiff now relies upon in an eleventh-hour attempt to qualify this admission (*see* Bellantoni Decl. Ex. 2, ECF No. 26-2) are not.

Because the Court finds that Plaintiff has failed to plead the requisite notice, Plaintiff's Title VI, NYSHRL, and NYCHRL claims are dismissed.  Leave to amend should be "freely given" unless there is "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 183 (1962).  Given the factual assertions relating to notice that Plaintiff has submitted by affidavit, amending the Complaint would not be futile.[4]  Furthermore, prejudice to Defendants if leave to amend were to be granted is small or nonexistent given the early stage of the proceedings.  Accordingly, the dismissal is without prejudice, with the exception that the Title VI claims asserted against Evanina and Enlow are dismissed with prejudice because individuals cannot be held liable under Title VI, *Rose v. Myers*, No. CIV.A. 13-7797, 2015 WL 1221352, at *2 (D.N.J. Mar. 17, 2015).

## II. Plaintiff's Contract Claim Must Be Dismissed, but Plaintiff's § 1981 Claim Survives

### A. Breach of Contract

Plaintiff's claim for breach of contract must also be dismissed.  No express written or oral contract is alleged in the Complaint, but under New York law, "an implied contract is formed

---

[4] Defendants' assertions to the contrary do not alter this conclusion because they would require the Court to weigh evidence and make credibility determinations, which a Court may not do on a Rule 12(b)(6) or Rule 56 motion.

when a university accepts a student for enrollment: if the student complies with the terms prescribed by the university and completes the required courses, the university must award him a degree." *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 93 (2d Cir. 2011); *see also Goldstein v. N.Y. Univ.*, 78 N.Y.S. 739, 740 (App. Div. 1902). The terms of the implied contract are "contained in the university's bulletins, circulars and regulations made available to the student." *Vought v. Teachers Coll., Columbia Univ.*, 511 N.Y.S.2d 880, 881 (App. Div. 1987). Implicit in the contract is the requirement that the institution "act in good faith in its dealing with its students." *Olsson v. Bd. of Higher Educ.*, 426 N.Y.S.2d 248, 251 (1980). At the same time, "the student must fulfill [her] end of the bargain by satisfying the university's academic requirements and complying with its procedures." *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206 (S.D.N.Y. 1998).

    Neither the pleadings nor Plaintiff's briefings on the instant motion identify the specific promise or obligation that Defendants allegedly breached. Plaintiff's sole argument on this point is that the Defendants' alleged "bad faith or ill will unrelated to [Plaintiff's] actual performance" amounted to a breach of Columbia's implied promise to act in "good faith" in its dealings with Plaintiff. (Pl.'s Opp. at 13, ECF No. 25 (quoting *Clements v. County of Nassau*, 835 F.2d 1000, 1004 (2d Cir. 1987)).) Such a promise is not mentioned anywhere in the pleadings, and for that reason it is unclear if the Court may rely on it on a motion to dismiss. But even if the Court were to consider Plaintiff's argument, it would be unavailing. Under ample New York precedent, a student cannot maintain a breach of contract claim against a university based solely on the implied covenant of "good faith," *see Keefe v. N.Y. Law Sch.*, 897 N.Y.S.2d 94, 95 (App. Div. 2010) ("Absent the existence of a contract, a claim alleging breach of the implied covenant of good faith and fair dealing is legally unavailing."); *cf. Clogher v. N.Y. Med. Coll.*, 976 N.Y.S.2d

7

198, 199 (App. Div. 2013) (dismissing a claim based on implied covenant of good faith and fair dealing because it was duplicative of the plaintiff's other contract claim), or a university's "broad policy statements," such as adherence to anti-discrimination laws, *see Spychalsky v. Sullivan*, No. CV010958DRHETB, 2003 WL 22071602, at *14 (E.D.N.Y. Aug. 29, 2003), *aff'd*, 96 F. App'x 790 (2d Cir. 2004) (rejecting a claim based on "the promise in [the College's] admissions materials and handbooks regarding compliance with 'all federal, state and local laws,'" reasoning that the promise constituted a "broad policy statement, not a basis for a valid contract claim"); *Ward v. N.Y. Univ.*, No. 99 CIV. 8733 (RCC), 2000 WL 1448641, at *4 (S.D.N.Y. Sept. 28, 2000) (rejecting claims based on various alleged promises including "to respect adult students and treat them with respect" and "to not discriminate against adult students"); *Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 208 (S.D.N.Y. 1998) (holding that the provision in the college's code of conduct that "all students should receive fair and equal treatment" is "merely a general statement of adherence by [the defendant] to existing anti-discrimination laws" and "does not create a separate and independent contractual obligation"). Accordingly, Plaintiff has failed to plead a contractual provision that is a valid basis for a contract claim under New York law. "Such a failure has been held to warrant the dismissal of this type of contract claim." *Routh v. Univ. of Rochester*, 981 F. Supp. 2d 184, 208 (W.D.N.Y. 2013), *app. withdrawn* (Jan. 9, 2014); *see also Jones v. Trs. of Union Coll.*, 937 N.Y.S.2d 475, 477 (App. Div. 2012) (finding that the lower court "properly determined that plaintiff's failure to identify the specific terms of the implied contract that he claims were violated by the College—such as an internal rule, regulation or code—is fatal to his claim").

The contract claim is dismissed without prejudice. However, the Court directs Plaintiff to the ample New York authority that a substantive challenge to a university's decision to expel a

student based on grades is "not cognizable in a breach of contract action." *Kickertz v. N.Y. Univ.*, 971 N.Y.S.2d 271, 277 (App. Div. 2013). Absent a specific promise that was breached, an Article 78 proceeding is the proper path for judicial review of an educational institutions' decisions, and such review would be limited to determining whether the decisions were arbitrary, capricious, irrational, or in bad faith. *See id.*; *Keles v. Trs. of Columbia Univ. in City of N.Y.*, 903 N.Y.S.2d 18, 18-19 (App. Div. 2010). If Plaintiff elects to replead the contract claim, it must be in accordance with these principles.

    B.    <u>42 U.S.C. § 1981</u>

To state a claim under § 1981, a plaintiff must allege (1) membership in a racial minority; (2) discrimination in connection with one or more activities enumerated in the statute; and (3) the defendant's intent to discriminate against the plaintiff on the basis of race. *See Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 1999). The statute enumerates the following rights: "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property." 42 U.S.C. § 1981(a). Of these activities, it appears that Plaintiff relies on the existence of a contract between herself and Columbia to meet this requirement. The phrase "make and enforce contracts," as used in § 1981, encompasses "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Defendant urges that Plaintiff's § 1981 claim must fail because she cannot state a claim for breach of contract under New York law. But this argument is premised on the assumption that the two claims must rise or fall together. While it is clear that a "plaintiff may state a § 1981 claim by alleging that the University breached a contract with [her], and that the breach was motivated by racial prejudice," *Rodriguez v. N.Y. Univ.*, No. 05 CIV. 7374 JSR, 2007 WL

9

117775, at *4 (S.D.N.Y. Jan. 16, 2007), nothing in § 1981 suggests that this is the *only* way to state a claim.  The Second Circuit has held, for example, that an at-will employee may sue his or her employer under § 1981 for racially motivated discharge.  *See Lauture v. Int'l Bus. Machines Corp.*, 216 F.3d 258, 260-64 (2d Cir. 2000).  In *Lature*, the Second Circuit reasoned that an implied contract exists between an at-will employee and his or her employer to work in exchange for payment.  *Id.*  Furthermore, because § 1981 defines "make and enforce contracts" to include "termination" of contracts, § 1981 applies to discharge of at-will employees.  *Id.*  "[E]ven though an at-will employee can be fired for good cause, bad cause, or no cause at all, he or she cannot be fired for an illicit cause."  *Id.* at 263 (internal quotation marks omitted).

The same reasoning applies here.  As explained above, a student enters into an implied contract upon enrollment at a university whereby "if the student complies with the terms prescribed by the university and completes the required courses, the university must award him a degree."  *Papelino*, 633 F.3d at 93.  *A fortiori*, dismissal from the university constitutes a "termination" of the implied contract; a racially motivated dismissal thus runs afoul of § 1981.  Accordingly, the § 1981 claim survives if Plaintiff can prove that the dismissal was racially motivated.  As Defendants do not offer argument concerning the sufficiency of Plaintiff's allegations regarding discriminatory intent,[5] there is no other basis to dismiss the § 1981 claim.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part, and Plaintiff's claims pursuant to Title VI, the NYSHRL, the NYCHRL, and New York contract law are DISMISSED in accordance with this Opinion.  Plaintiff shall have until 30 days from the date of this Order to amend the Complaint as to those claims that are

---

[5] Defendants' argument that Plaintiff has failed to establish a racially hostile educational environment under Title VI (*see* Defs.' Mem. at 8-9, ECF No. 19) does not address the sufficiency of Plaintiff's allegations regarding discriminatory intent under § 1981.

dismissed without prejudice. If Plaintiff elects to file an amended complaint, Defendants shall have until 30 days from the date of Plaintiff's filing to move or file responsive pleadings. If Plaintiff does not file an amended complaint, Defendants shall have until sixty days from the date of this Order to file responsive pleadings. An initial case management and scheduling conference pursuant to Fed. R. Civ. P. 16 is scheduled for June 19, 2015 at 11:45 a.m., at the United States Courthouse, 300 Quarropas Street, Courtroom 218, White Plains, New York 10601. The parties shall confer in accordance with Fed. R. Civ. P. 26(f) at least 21 days prior to the conference and attempt in good faith to agree upon a proposed discovery plan that will ensure trial readiness within six months of the conference date. The parties shall also complete a Civil Case Discovery Plan and Scheduling Order and bring it to the conference. The Court respectfully directs the Clerk to terminate the motion at ECF No. 17.

Dated: April 13, 2015  
White Plains, New York

SO ORDERED:

_____  
NELSON S. ROMÁN  
United States District Judge

11